ESTATE OF HILGERMANN: LaSALLE, Administrator, and others, Appellants, vs. HILGERMANN, Respondent.

*May 13—June 20, 1932.*

For the appellants there was a brief signed by *O'Melia & Kaye, John W. Kelley,* and *Walter F. Kaye,* all of Rhinelander, and oral argument by *A. J. O'Melia.*

For the respondent there was a brief by *Earl L. Kennedy* of Rhinelander and *Frederick Mains* and *James Hartnett,* both of Chicago, and oral argument by *Mr. Mains.*

Fritz, J.   In the course of the proceedings in the administration of the estate of Otto A. Hilgermann, who died May 2, 1927, an issue was first raised on September 7, 1927, on behalf of Frieda Hilgermann, the widow of the deceased, as to the validity of an antenuptial agreement which was entered into between her and the deceased on January 22, 1917, in the state of Illinois.   After her husband's death she had removed to that state, and there retained counsel who contend that the antenuptial agreement is invalid.   Since they first raised that issue, her attorneys have filed nineteen voluminous petitions and motions, which needlessly resulted in swelling the record to 770 pages, as certified to this court.   That record discloses repeated tactics and practices that have prevented the prompt and final determination on the merits of the relatively simple ultimate issues involved in relation to that antenuptial agreement. As a result, the use and enjoyment of the property of the estate, by those lawfully entitled thereto, and the conclusion of -the administration proceedings have been delayed

to an extent that is indeed deplorable and intolerable. The needless expense and waste of time and energy which the record discloses as a result of the dilatory methods pursued by counsel in the county court, and even in the circuit court, by commencing litigation there which was then wholly unnecessary, could and, in the interests of justice and the proper discharge of their duties as officers of the court, should have been avoided by counsel by co-operating in promptly obtaining an adjudication in relation to that agreement the very first time that the issues were raised, and could have been decided on the merits, upon the filing of the respondent's petition for a widow's allowance in September, 1927.

Even when the county court finally, on September 9, 1930, on the administrator's motion, ordered the issues to be tried on the merits on October 21, 1930, the respondent and her counsel failed to appear for trial. Instead, without any prior notice to opposing counsel to enable them to save the expense of procuring the attendance of foreign witnesses and otherwise being ready for trial, respondent relied upon the efforts of her local attorney of record to procure a continuance, when the matter was called, upon affidavits made by respondent and her Illinois counsel as to the inability of one of them to attend because of overwork in other litigation, and impending illness, and as to their inability to take proposed depositions because of engagements in other trial work. Those efforts resulted in another continuance and setting the case for trial on November 19, 1930. On that day respondent and her Illinois counsel again failed to attend for the trial. Her local attorney again moved for a continuance, and in his affidavit stated that he had been informed that her chief counsel in Illinois, on November 18, 1930, had been stricken, and that he had been removed to a hospital. The court ordered the trial to proceed.

Thereupon evidence was introduced under objections by respondent's local attorney, and the court made findings of fact and conclusions of law and entered a judgment on November 26, 1930, which adjudged that the alleged antenuptial agreement was a valid and binding agreement between the said parties thereto. On November 28, 1930, notice of entry of that judgment was served upon respondent's attorney. On October 24, 1931, respondent, by her attorneys, filed a petition containing eighty-one pages, wherein she again restated many of the previous proceedings in the estate and made sixteen motions, including a motion for an order to relieve petitioner from the judgment of November 26, 1930, as to the antenuptial agreement, because of petitioner's mistake, inadvertence, surprise, and excusable neglect. Most of the other motions were of the same dilatory and inconsequential nature as the great bulk of the other matters filed on behalf of respondent. In the written opinion upon that motion to vacate the judgment the court said:

"Here we have not a firm of attorneys, but single attorneys, of three different cities, associated together merely for the purpose of representing the widow's rights in the matter. It is very clear that Frederick Mains is the chief or main counsel upon whom the widow relied, as it was with him she dealt and contracted, and the bulk of the work, if not the exclusive work of the preparation, fell upon him; E. L. Kennedy, local counsel, was chiefly retained because of his ability to practice before the Wisconsin courts of record and to thus clothe Frederick Mains with authority to practice and plead before this court. All affidavits submitted show widow's counsel ready for trial and that they deemed she had a good defense; and that the widow and all intended to come and try the matter, but that the illness and collapse of Mains prevented any one's presence but Kennedy. Whether Mains was really incapacitated or not I cannot tell except that several affidavits so state he was, and no counter affidavits were submitted. This much is

certain: Mains had informed the widow to be ready to go to Rhinelander for trial November 19, 1930, when called by phone, and due to his incapacity she was not notified to go or not to go, because of the mistaken idea of counsel that she had a statutory right to a continuance, under such circumstances, and as a result of all this, judgment was rendered against her and she lost a possible chance to her widow's third in an estate worth $300,000 if the antenuptial agreement was invalid. I do not believe she was foreclosed of petitioning for relief therefrom because of the presence of her attorney E. L. Kennedy. He was not prepared in all the intricate problems of the widow, for that was the duty of Mains. Neither the widow nor her witnesses were here. He did not even have the benefit of Mains' trial brief. Even if it might be said to be inexcusable neglect on the part of Mains in not arranging his other work so that he could have been here, or that Hartnett and Kennedy together were guilty of inexcusable neglect in not being prepared to represent the widow in the event of Mains' death, illness, or failure to appear, I do not find, under the circumstances, that the party aggrieved, namely the widow herself, is guilty of inexcusable neglect. She neglected to appear, it is true, but she was penniless and Mains had made quite exhaustive preparation of her case for a period over three years and had expended a great deal of time, effort, and expense in her behalf, and she could not safely proceed to trial without him, and could therefore be excused when she relied upon him telling her to be ready to go to Rhinelander upon a phone call from him, and if he did not advise her to appear, due to her age, her lack of business experience, and all circumstances, I find her neglect to appear was excusable. I believe this is in conformity to Wisconsin decisions. . . .

"This case before us now appeals strongly to the conscience of this court. Our statutes deem that our courts shall construe this section before us liberally in furtherance of justice, and it is apparent from the recitals in moving papers and from the arguments to the court that justice had not been done, and could not be done without a full hearing and determination as to the validity or invalidity of the antenuptial agreement. I find no laches on the part of

the widow to bar relief under sec. 269.46. The moving party is not required to show diligence as where a continuance is sought, but it is enough to show excusable neglect within one year."

Accordingly, the court entered the order from which the appeal was taken and in which it set aside the judgment entered November 26, 1930, and ordered a retrial of the issues therein adjudicated.

The power of the county court to vacate the judgment and grant a retrial is provided for in sec. 324.05, Stats., which is as follows:

"If any person aggrieved by any act of the county court shall, from any cause without fault on his part, have omitted to take his appeal according to law the county court of the same county may, if it shall appear that justice requires a revision of the case, on the petition of the party aggrieved and upon such terms and within such time as it shall deem reasonable, allow an appeal to be taken and prosecuted in like manner and with the same effect as though done seasonably; or the county court may in its discretion reopen the case and grant a retrial of the matter complained of. No such . . . retrial shall be allowed . . . unless the petition therefor shall be filed in the office of the clerk of the county court within one year after the act complained of. Whenever the county court shall allow or disallow an appeal, or retrial, as provided in this section, the party aggrieved may appeal therefrom."

Under that statute it is expressly declared to be within the court's discretion to reopen and grant a retrial of a matter complained of. The conditions imposed by statute for the exercise of that discretion and the granting of a retrial are that it must appear that the party applying "from any cause without fault on his part" omitted to take an appeal (*Estate of Cudahy,* 196 Wis. 260, 219 N. W. 203), and that "justice requires a revision of the case." The statute does not expressly make the granting of relief con-

tingent upon the exercise of diligence in making the application. In authorizing the filing of the petition within one year after the act complained of, it discloses a policy of liberally extending the limitations as to time for appeals prescribed in sec. 324.04, Stats. Failure to proceed with more diligence within the one-year period may afford some criterion, and have some bearing as to whether the moving party is without fault, and whether justice requires a revision. Apparent delay or lack of diligence are circumstances that may well enter into the trial court's consideration, but the mere fact of delay within the year does not in and of itself defeat the application.

Although in many respects the record in this case discloses that the respondent is chargeable with inexcusable delays in the prior proceedings, there is some basis for the court's inference that the failure of the respondent to be present in person at the trial on November 19, 1930, was due to the inability of the Illinois counsel, because of his illness, to telephone to her as he had arranged to do. This court has recognized that "defaults incurred through the ill advice or negligence of counsel are to be relieved against as well as any others." *Whereatt v. Ellis*, 70 Wis. 207, 215, 35 N. W. 314; *Sawicki v. Wulff*, 169 Wis. 377, 172 N. W. 722. So respondent's failure to attend the trial in person, together with the other circumstances stated in the foregoing excerpts from the court's opinion, admitted of the finding that her neglect to appear on November 19, 1930, was excusable and without fault on her part.

The opinion shows that after careful and conscientious consideration the court concluded that "justice has not been done, and could not be done without a full hearing and determination as to the validity or invalidity of the antenuptial agreement." Under those circumstances, justice required a revision of the case, and the exercise of the

court's discretion to reopen the case and grant a retrial for that purpose. Consequently, we are not warranted in concluding that there was an abuse of discretion on the part of the trial court; and in the absence of a clear case of an abuse of discretion the order must be allowed to stand. *Colla v. Racine,* 194 Wis. 501, 217 N. W. 297; *Mellor v. Heggaton,* 205 Wis. 42, 236 N. W. 558. See, also, *Boutin v. Catlin,* 101 Wis. 545, 77 N. W. 910; *Sawicki v. Wulff, supra.* Inasmuch as the judgment has been vacated, there is no occasion at this time to review that judgment upon respondent's notice for review under sec. 274.12, Stats. Likewise as the basic and controlling issue of the validity of the antenuptial contract is to be retried, there is no occasion for now reviewing, under respondent's notice, the other rulings as to matters of procedure and practice, which do not interfere with a prompt determination of the real issue upon the merits.

*By the Court.*—Order affirmed.